STATE v. EULISS RITTER, CHARLIE RITTER AND HARVEY KENNEDY.

(Filed 16 December, 1953.)

**1. Criminal Law § 52a (1)—**

On motion for judgment of nonsuit, the evidence is to be considered in the light most favorable to the State, and it is entitled to the benefit of every reasonable inference to be drawn therefrom.

STATE *v.* RITTER.

**2. Assault § 13—**

Evidence tending to show that ill feeling had existed between appealing defendants and their adversary, and that in consequence all of them willingly entered into an affray in which the adversary of the appealing defendants was seriously injured by knife wounds and a beating with a tire tool, *is held* sufficient to sustain the denial of the appealing defendants' motion for nonsuit in a prosecution for an assault with a deadly weapon with felonious intent to kill, inflicting serious injuries not resulting in death.

**3. Assault § 14b—**

The charge of the court in this case *is held* to have given appealing defendants the benefit of their contentions that they were the innocent victims of an unlawful assault by their adversary and to have charged the law on the right of self-defense applicable to the evidence, and defendants' assignments of error to the charge cannot be sustained.

**4. Assault § 9a—**

The plea of self-defense must be based upon force exerted in good faith to prevent a threatened injury, and such force must not be excessive or disproportionate to the force it is intended to repel, the question of excessive force being ordinarily for the determination of the jury.

**5. Assault § 9b—**

If an affray is willingly entered into by both parties and there is no retreat by either of them, the brother of one of the parties may not be excused in entering the affray on the ground that he did so in the defense of his brother, since the right to fight in the defense of another cannot be more extensive than the right of such other to use force in self-defense.

**6. Criminal Law § 78e (2)—**

In this prosecution for assault, an inadvertence of the court in referring to certain witnesses as witnesses offered by the State, when as a matter of fact they were witnesses of a codefendant, the appealing defendants' adversary in the affray, comes within the rule requiring misstatements of the evidence or contentions of the parties to be brought to the trial court's attention in time to afford opportunity for correction in order for an exception thereto to be subject to review.

APPEAL by defendants, Euliss and Charlie Ritter, from *Rousseau, J.,* May Term, 1953, of MOORE.

At the August Term, 1952, of the Superior Court of Moore County, separate bills of indictment were returned against the defendants Euliss Ritter and Charlie Ritter, and Harvey Kennedy; charging the defendant, Euliss Ritter, with a felonious assault on Harvey Kennedy with a deadly weapon, to wit: a knife, with the felonious intent to kill and murder the said Harvey Kennedy, inflicting serious injuries not resulting in death; charging Charlie Ritter on a like felonious assault upon the said Harvey Kennedy, with a deadly weapon, to wit: a tire tool, with the intent to kill and murder the said Harvey Kennedy, inflicting serious injuries not

resulting in death, and charging Harvey Kennedy with a like felonious assault upon both Euliss and Charlie Ritter.

The cases were consolidated for the purpose of trial and tried as an affray, the State introducing Kennedy as a witness against the two Ritters, and introducing both Euliss and Charlie Ritter as witnesses against Kennedy.

The State's evidence was sufficient to show the following facts:

1. That prior to the affray involved in this appeal "bad blood" existed between the Ritters and Kennedy, caused by the fact that Kennedy had previously had a difficulty with Jesse Ritter, a brother of Euliss and Charlie Ritter.

2. That late in the afternoon on 20 June, 1952, the defendant Harvey Kennedy was sitting in front of a filling station in Moore County, operated by Mall Craven; that he saw Euliss and Charlie Ritter drive up in separate cars; that he got up and went inside the filling station and lay down on a counter.

3. The evidence tends to show that when Euliss and Charlie Ritter entered the filling station, Charlie said to Kennedy: "What do you boys mean fighting Jesse?" Kennedy stood up on the counter and took his knife out of his pocket. Charlie said: "Put up your knife." Mr. Craven ordered the Ritter boys out of the room. Kennedy put his knife in his pocket. Charlie Ritter then drew his knife and reached for Kennedy. Kennedy climbed up on the shelves in the corner of the filling station, with Charlie after him. There were some bottles on the shelves and Kennedy threw one at Charlie and missed him. He then threw one at Euliss and hit him. Charlie then threw a jug at Kennedy, which bursted beside his head, then Kennedy ran out of the room grabbing a tire tool in each hand as he ran. About that time Charlie threw a tire tool at Kennedy. Kennedy took out after him, and Charlie, who was in or near the highway in front of the filling station at that time, threw a rock at Kennedy and whirled around and was hit by a passing truck. He then crawled to where Kennedy was standing and grabbed him by the legs and held him. The evidence is conflicting as to whether Kennedy hit Charlie Ritter with the tire tool while he was holding him by the legs, but at this point in the fight, Euliss Ritter stabbed Kennedy with a knife six times in the chest, back, and shoulder. By this time Kennedy was down. Euliss Ritter then stabbed Kennedy in the head with the knife and Charlie Ritter got one of the tire tools which Kennedy previously had and hit him in the mouth and knocked out four teeth, and continued beating him with the tire tool while he was lying on the ground, until he was stopped by a passing motorist. The motorist got Kennedy in his car and took him to a hospital, where he remained for five days.

The jury returned a verdict of guilty as charged against all three defendants. The court imposed prison sentences of eighteen months against each of the defendants. Defendants Euliss and Charlie Ritter appeal, assigning error.

*Attorney-General McMullan and Assistant Attorney-General Love for the State.*

*H. F. Seawell, Jr., Robert L. McMillan, Jr., Pittman & Staton, and Ed B. Hatch, Jr., for appellants.*

DENNY, J.   The defendants' second and tenth assignments of error are based on their exceptions to the refusal of the court to sustain their motion for judgment as of nonsuit at the close of the State's evidence and renewed at the close of all the evidence. On such motion, the evidence is to be considered in the light most favorable to the State, and it is entitled to the benefit of every reasonable inference to be drawn therefrom. *S. v. Gentry,* 228 N.C. 643, 46 S.E. 2d 863; *S. v. Davenport,* 227 N.C. 475, 42 S.E. 2d 686; *S. v. Gordon,* 225 N.C. 757, 36 S.E. 2d 143; *S. v. Scoggins,* 225 N.C. 71, 33 S.E. 2d 473; *S. v. McKinnon,* 223 N.C. 160, 25 S.E. 2d 606. We think the evidence offered by the State when so considered was sufficient to sustain the ruling of the court below.

Furthermore, when all the evidence adduced in the trial below is considered, it is sufficient to support the conclusion that these appellants had some ill feeling towards the defendant Kennedy resulting from a difficulty which he had had with their brother, Jesse Ritter, and were seeking satisfaction. In fact, according to Kennedy's testimony, after he got out of the filling station, Charlie Ritter said: "You have been fighting Jesse and you are going to pay for it." It was then he threw the tire tool at Kennedy and ran and picked up a rock and also threw it at him. It would seem from the evidence that all three of the defendants fought willingly, with Kennedy losing the bout.

The defendants' assignments of error Nos. 11 through 24 are to the charge of the court. However, we will not undertake to discuss these assignments of error *seriatim.* The appellants urgently contend, however, that they were the innocent victims of the defendant Kennedy's unlawful assault on them and that they fought only in self-defense. Be that as it may, the court in its charge to the jury gave them the benefit of their contentions in that respect. Moreover, the charge of the court was in substantial compliance with the law on the right of self-defense applicable to the contentions of the appellants. *S. v. Robinson,* 212 N.C. 536, 193 S.E. 701; *S. v. Terrell,* 212 N.C. 145, 193 S.E. 161; *S. v. Marshall,* 208 N.C. 127, 179 S.E. 427; *S. v. Keeter,* 206 N.C. 482, 174 S.E. 298; *S. v. Cox,* 153 N.C. 638, 69 S.E. 419. In the last cited case, this Court

said: "In order to make good the plea of self-defense, the force used must be exerted in good faith to prevent the threatened injury, and must not be excessive or disproportionate to the force it is intended to repel, but the question of excessive force was to be determined by the jury."

The appellant Euliss Ritter insists that he took no part in the affray until he went to the defense of his brother. Consequently, he contends that he had the right to defend his brother and committed no offense in doing so. The general rule in this respect is pointed out in *S. v. Cox, supra,* in which case the Court was considering a similar contention. The Court said: "In the oral argument here the prisoner's counsel earnestly contended that the prisoner had the right to enter the fight to protect his father, but he only had that right to the same extent and under the same circumstances under which the father himself could have used force. If the father entered the fight willingly, and had not afterwards withdrawn from the fight and retreated to the wall, or if he used excessive force, he would have been guilty. if he had slain his assailant. The same principle would apply to the conduct of the son, fighting in defense of a father who had not retreated to the wall or if the prisoner used excessive force."

The evidence disclosed on this record clearly tends to show that Charlie Ritter and the defendant Kennedy never ceased to fight after they ran out of the filling station until after Euliss Ritter entered the fight, and, according to the State's evidence, stabbed Kennedy in the manner heretofore described. Therefore, if Charlie Ritter entered the fight willingly, not having withdrawn therefrom, Euliss Ritter, in undertaking to aid his brother, was equally guilty of participating in the affray. Even so, Euliss Ritter's contention in this respect was submitted to the jury in a proper charge. The facts in the case of *S. v. Maney,* 194 N.C. 34, 138 S.E. 441, relied on by the appellants, are distinguishable from those presented in the instant case.

Exceptions Nos. 14 and 21 are directed to a statement in the charge of the court in which Mall Craven, a Mr. Ashburn, and Carl Rouse were referred to as witnesses offered by the State, when as a matter of fact they were offered by the defendant Kennedy. A mere inadvertence of this character falls within the rule applicable to misstatements of the evidence or contentions of the parties arising on the evidence by the trial judge in charging the jury. When that occurs, the aggrieved party must call the attention of the judge to the misstatement at the time it is made, and thus afford the judge an opportunity to correct it before the case goes to the jury. Otherwise, the misstatement of the evidence or the contentions based thereon will not be subject to review on appeal. *Brewer v. Brewer,* 238 N.C., 607, 78 S.E. 2d 719; *S. v. Lambe,* 232 N.C. 570, 61 S.E. 2d 608, and cited cases.

We have carefully examined the remaining exceptions and assignments of error, and are of the opinion that the trial below was free from any prejudicial error that would warrant an interference with the result thereof.

No error.